IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY L. BILIOURIS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1591-N |
| | § | |
| SUNDANCE RESOURCES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

This Order addresses Defendant Sundance Resources, Inc.'s ("Sundance") motions to dismiss [39 & 90], Defendants Michael Patman and David P. Patman's motion to dismiss [43], and Plaintiffs' motion for the appointment of a receiver [82]. For the reasons given below, the Court grants in part and denies in part Defendants' motions. The Court will by separate order set Plaintiffs' motion for an evidentiary hearing.

### I. Factual Background

Plaintiffs are investors who participated in one or more "Rig Bank Funds" set up by Sundance to finance the purchase of oil and gas drilling rigs. While the exact details of these Funds are not relevant for purposes of this Order, Plaintiffs generally allege the following facts. Between 2004 and 2006, Plaintiffs collectively loaned Sundance $14,629,500 for the purchase of five rigs in exchange for carried working interests in any wells drilled using those rigs and with Sundance's guarantee that all loan principal amounts would be repaid in full. Sundance initially made principal and working interest payments as promised,

completely repaying the principal amounts of some loans, but later fell behind and eventually stopped making payments to Plaintiffs altogether. Unknown to Plaintiffs at the time, Sundance could not make these payments because, Plaintiffs allege, Defendants systematically transferred Sundance's assets to company insiders and their affiliated companies, including the Patmans and Patman Drilling International, Inc.,[1] and accumulated large amounts of debt in Sundance's name. This scheme allegedly shifted the funds acquired from Plaintiffs' loans to Sundance insiders while simultaneously driving the company into insolvency and leaving nothing to satisfy the company's obligations to Plaintiffs. In fact, Defendants continued to transfer Sundance's assets, including $4 million in cash to the Patmans, even after Sundance became insolvent.

Plaintiffs seek the appointment of a receiver and allege causes of action against Defendants for fraudulent transfer, common-law and statutory fraud, negligent misrepresentation, breach of contract, unjust enrichment, various forms of derivative liability, and violation of the Texas Securities Act. Defendants now move to dismiss all of Plaintiff's claims on various grounds.

## II. MOTION TO DISMISS STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable

---

[1] Patman Drilling International, Inc. ("PDI") entered bankruptcy after this suit was filed. All claims against PDI have since been severed into another action.

complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965, 1974 (2007). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Id.* at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). In ruling on a Rule 12(b)(6) motion, the court must limit its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. PLAINTIFFS STATE A CLAIM FOR FRAUDULENT TRANSFER

Plaintiffs' pleadings state a claim for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act (TUFTA), TEX. BUS. & COM. CODE §§ 24.001-13. To state a claim for fraudulent transfer under TUFTA, a creditor whose claim arose before the allegedly fraudulent transfer at issue must allege that the transfer was made "without receiving a reasonably equivalent value . . . and the debtor was insolvent at that time." TEX. BUS. & COM. CODE § 24.006(a). Although the Fifth Circuit has not yet addressed whether Rule 9(b) of the Federal Rules of Civil Procedure applies to claims for fraudulent transfer, *see Quilling v. Stark*, No. 3:05-CV-1976-L, 2006 WL 1683442, at *5 (N.D. Tex. June 19, 2006), the Court need not decide that issue because Plaintiffs have pled facts sufficient to state a claim for fraudulent transfer under Rule 9(b)'s more stringent standard.

ORDER – PAGE 3

In paragraph 36 of their Complaint, Plaintiffs allege that "in late 2006, Michael E. and David P. Patman, who are Sundance insiders, took approximately $4 million in cash from Sundance while the company was insolvent." Therefore, Plaintiffs allege specific facts regarding a particular transfer from Sundance to the Patmans, at a particular time when Sundance was insolvent, and with Sundance receiving no – let alone reasonably equivalent – value in return. Plaintiffs need do no more. This allegation alone is sufficient to withstand Defendants' motions to dismiss.[2]

### IV. PLAINTIFFS' REMAINING FRAUD CLAIMS ARE NOT PLED WITH SUFFICIENT PARTICULARITY

Plaintiffs' claims for common-law fraud, statutory fraud, and negligent misrepresentation, however, fail to meet the pleading requirements of Rule 9(b). To successfully plead fraud under Rule 9(b), a plaintiff must allege the "'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

---

[2]Sundance also argues that Plaintiffs fail to state a fraudulent transfer claim because PDI, which Sundance argues is an indispensable party by virtue of being the recipient of allegedly fraudulent transfers, was severed into a separate action. However, this argument ignores the totality of Plaintiffs' fraudulent transfer allegations. Even if the recipient of an allegedly fraudulent transfer is an indispensable party to a claim arising from that transfer, Plaintiffs have successfully alleged a fraudulent transfer from Sundance to Michael and David Patman, both of whom remain parties in this case.

Here, Plaintiffs rely heavily on group allegations that fail to specify which members of the group engaged in the alleged conduct. It is well established that "general allegations, which do not state with particularity what representations *each defendant* made, do not meet [the particularity] requirements" of Rule 9(b). *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (emphasis added) (citing 2A MOORE'S FEDERAL PRACTICE ¶ 9.03 (2d ed. 1985)). Here, Plaintiffs' Complaint is virtually devoid of any detailed individual allegations and therefore fails to state a cause of action for common-law or statutory fraud.[3]

Plaintiffs' pleadings also fail to state a claim for negligent misrepresentation. "Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003). Once a fraud claim is dismissed under Rule 9(b), a claim for negligent misrepresentation based on the same operative facts must also be dismissed unless "it is possible for the Court to describe a simple redaction that removes allegations of fraud from the complaint, but leaves the plaintiff's valid and intelligible negligent misrepresentation claim intact." *American Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 752 (N.D. Tex. 2005). Here, Plaintiffs group all relevant factual allegations into paragraphs 39 to 61 and simply recite the elements of each cause of action below under separate headings. For this reason, the Court can discern no

---

[3]The Court also reviewed the declaration of William G. Lionetta, which Plaintiffs incorporate by reference into their Complaint, and concludes that it fails to save Plaintiff's fraud allegations from dismissal under Rule 9(b).

distinct focus in the Complaint on negligent misrepresentation, separate from those allegations otherwise directed at pleading Plaintiffs' fraud-based causes of action, and, therefore, the Court cannot devise a "simple redaction" of Plaintiffs' allegations that would leave behind an intelligible claim for negligent misrepresentation. *See id.* ("[W]hen it would be necessary to engage in line-by-line redaction in order to excise inadequate averments of fraud from accompanying claims of negligent misrepresentation, several factors counsel in favor of dismissal."). Although Plaintiffs point out that they pled in one place that "Defendants did not exercise reasonable care or competence in obtaining or communicating the information," Pl.'s Compl. ¶ 73, a "vague statement" merely alleging that a defendant's conduct was negligent is not a sufficiently separate focus to avoid the heightened pleading standard of Rule 9(b). *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. MDL-1446, 2007 WL 2455296, at *18 (S.D. Tex. Aug. 24, 2007) (dismissing claim for negligent misrepresentation under Rule 9(b) where the plaintiffs pled only a "vague statement" that the defendants' conduct was "clearly negligent in derogation of the duty they owed"). Accordingly, the Court dismisses without prejudice to refiling Plaintiffs' claims for common-law fraud, statutory fraud, and negligent misrepresentation.

### V. PLAINTIFFS STATE A CLAIM FOR THE APPOINTMENT OF A RECEIVER

Plaintiffs also successfully state a claim for the appointment of a receiver because TUFTA provides unsecured creditors with a substantive right to the prejudgment appointment of a receiver. There is much confusion in the case law regarding whether a federal court may appoint a receiver at the behest of an unsecured creditor who has not yet

reduced his or her claim to a judgment. This confusion primarily stems from the fact that the United States Supreme Court last squarely addressed this topic in *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491 (1923), prior to the Court's adoption of the *Erie* doctrine in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In *Pusey*, the Court took a decidedly grim view of an unsecured creditor's ability to seek a receiver prior to obtaining a judgment. *See Pusey*, 261 U.S. at 497 ("The only substantive right of a simple contract creditor is to have his debt paid in due course . . . . He has no right whatsoever in equity until he has exhausted his legal remedy.").

However, since that time, courts have split on *Pusey*'s precedential value post-*Erie*. Some courts have steadfastly relied on *Pusey*, refusing to apply state receivership law in diversity cases. *See, e.g.*, *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (holding that federal law exclusively governs "the appointment of a receiver pendente lite" and that such a result "does not conflict with the *Erie* doctrine's requirement that state law apply to matters of substance"); *New York Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 291 (E.D. Cal. 1991) ("[T]he application of federal law to the appointment of a receiver in a diversity case is consistent with the *Erie* doctrine because the appointment of a receiver does not directly affect the outcome of the action."). Others have done the opposite and exclusively apply state law with respect to receiverships, holding that, after *Erie,* equitable remedial rights were merged into the new class of "substantive" rights. *See Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 826 (3d Cir. 1959) ("Today . . . it is likely that the Delaware statute involved in the Pusey & Jones case would be regarded as

supplying a substantive right which the federal courts in a diversity action would recognize . . . . [E]quitable remedial rights thus can be thought of as merged into . . . the area of substantive rights. We see no bar to the appointment of a receiver if the law of Pennsylvania would grant the appointment."); *Cowin v. Bresler*, 741 F.2d 410, 417 n.8 (D.C. Cir. 1984) ("In our view, the propriety – in a diversity suit – of appointing a receiver to liquidate a business organized under state law sounds a substantive right that should be determined by reference to state law."); *Glenbrook Capital L.P. v. Kuo*, 525 F. Supp. 2d 1130, 1148-49 (N.D. Cal. 2007) ("[T]he appointment of a receiver is a claim in and of itself – a substantive right, not just a remedy."); *Ashley v. Keith Oil Corp.*, 73 F. Supp. 37, 55 (D. Mass. 1947) ("[T]he question whether a stockholder or creditor of a corporation has a substantive right to have a receiver appointed in a suit founded on the diversity jurisdiction clause is to be determined by reference to state law."). Moreover, at least one circuit – the Fifth Circuit – has taken a middle ground, holding that courts should analyze state receivership laws on a case-by-case basis to determine whether they are substantive or procedural. *See Kohler v. McClellan*, 156 F.2d 908, 912-13 (5th Cir. 1946) (holding that state receivership law should apply if it grants substantive a right to relief rather than merely regulates the equity powers of state courts).

In *Kohler*, the Fifth Circuit held that, in diversity cases, state receivership law should apply so long as that law confers a substantive right to creditors that is intended to "give them adequate relief" and is "not merely an enlargement of the remedial power of the local court." *Id.* at 913. In doing so, the Court distinguished between state laws that "regulat[e]

ORDER – PAGE 8

the equity powers of [state] courts" and those that "create a new interest (right) in . . . creditors." *Id.* The question, then, is whether Plaintiffs can point to a Texas law that provides a substantive right to unsecured creditors to seek the appointment of a receiver before obtaining a judgment.

The Court holds that Plaintiffs' claim under TUFTA provides such a substantive right.[4] TUFTA is not an act aimed at generally regulating the powers of Texas courts; rather, TUFTA empowers creditors with substantive rights necessary to seek redress against those who attempt to avoid debts through fraud. Moreover, TUFTA expressly includes unsecured creditors within its scope, TEX. BUS. & COM. CODE § 24.002(3)-(4), applies with equal force "whether or not the [the creditor's right to payment] is reduced to judgment," *id.*, and includes the appointment of a receiver among the remedies available to plaintiffs. *Id.* § 24.008(a)(3)(B).

Defendants incorrectly argue that TUFTA forbids the prejudgment appointment of a receiver for unsecured debt because the act states that some of its remedies are "subject to applicable principles of equity." *Id.* § 24.008(a)(3). It is not clear what the drafters of the Uniform Fraudulent Transfer Act ("UFTA") might have intended this phrase to mean. The comments to that section, however, indicate they certainly did not intend to bar unsecured creditors from seeking the appointment of a receiver before obtaining a judgment. *See* UNIFORM FRAUDULENT TRANSFER ACT § 7 cmt. (1984) ("As under the Uniform Fraudulent

---

[4]Plaintiffs also point the Court to a number of other Texas statutes that they argue support the right of an unsecured creditor to the prejudgment appointment of a receiver. Because TUFTA provides such a right, the Court need not address the remaining statutes.

ORDER – PAGE 9

Conveyance Act, a creditor is not required to obtain a judgment against the debtor-transferor or to have a matured claim in order to proceed under subsection (a)."); *accord Shapiro v. Wilgus*, 287 U.S. 348, 355 (1932) ("Ordinarily a creditor who seeks the appointment of receivers must reduce his claim to judgment and exhaust his remedy at law. The Uniform Fraudulent Conveyance Act may have relaxed that requirement in many of the states . . . .").

Moreover, this construction of TUFTA comports with the broad remedial goals underlying UFTA and its predecessors. These statutes were enacted to provide swift, effective, and uniform remedies against those seeking to "hinder, delay, or defraud creditors." UNIFORM FRAUDULENT TRANSFER ACT, Prefatory Note (1984). Consistent with these goals and with the general principle that remedial statutes should be construed broadly to effect their purpose, *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1351 (5th Cir. 1980) ("[R]emedial legislation . . . must be construed broadly and liberally so as to effectuate the legislature's remedial purpose."), the Court holds that TUFTA provides creditors – secured and unsecured alike – with the substantive right to seek quickly the appointment of a receiver to secure their interests and prevent further fraudulent conduct without first enduring the long delay necessary to reduce their claims to judgment.

Accordingly, the Court holds that Plaintiffs state a claim for the appointment of a receiver. The Court will by separate order set plaintiffs' motion for a receiver for an evidentiary hearing.

## VI. ALL OTHER CLAIMS SURVIVE

Finally, the Court denies Defendants' motions with respect to all other claims. Although it is unclear under Texas law whether unjust enrichment is an independent cause of action, the Court need not decide that issue because Plaintiffs have pled all elements of a claim for breach of contract. *Compare Pepi Corp. v. Galliford*, ___ S.W. 3d ___, No. 01-05-00788-CV, 2007 WL 441582, at *2 (Tex. App. – Houston [1st Dist.] Feb. 8, 2007, pet. struck) ("Unjust enrichment is an independent cause of action." (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998) (analyzing a claim for unjust enrichment on its merits))) *with Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 246 (Tex. App. – Fort Worth 2007 no pet.) ("Unjust enrichment, itself, is not an independent cause of action . . . .").

Further, Plaintiffs' various claims for derivative liability survive because at least one predicate tortious act remains in Plaintiffs' pleadings. Defendants move to dismiss Plaintiffs' claims for civil conspiracy, aiding and abetting, joint enterprise, and alter ego on the grounds that each is predicated on a showing of fraud and therefore cannot stand if Plaintiffs' fraud-based claims are dismissed. However, as discussed above, Plaintiffs have stated a claim for fraudulent transfer under TUFTA. Therefore, Plaintiffs' surviving claim for fraudulent transfer serves as a sufficient predicate for derivative liability.[5] *See, e.g.*, *Laxson v. Giddens*,

---

[5] Sundance also argues that Plaintiffs' alter ego claim should be dismissed because PDI, which Plaintiffs allege operated Sundance as its alter ego, is an indispensable party to that claim. However, Sundance again ignores the totality of Plaintiffs' allegations. Even if the entity behind the corporate veil is an indispensable party to an alter ego claim, Plaintiffs have successfully alleged that Sundance also operated as an alter ego of Michael and David Patman, both of whom remain parties in this case.

48 S.W.3d 408, 410-11 (Tex. App. – Waco 2001, pet. denied) (holding that a violation of a Texas statute is an "unlawful act" sufficient to support a cause of action for civil conspiracy); *In re Texas Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex. App. – Dallas 2005, no pet.) ("The fraudulent transfer of assets is a tort.").

The Court likewise denies Defendants' motions as to Plaintiffs' Texas Securities Act claim. Defendants argue that this claim should be dismissed because the Rig Bank Funds are exempt from the Texas Securities Act's registration requirements because "there were fewer than 35 total sales for each contract." However, even if this fact alone were enough to negate Plaintiffs' claim, it is not found in the pleadings and, therefore, the Court cannot consider it on a motion to dismiss. *See Spivey*, 197 F.3d at 774 (On a motion to dismiss, "[t]his court will not look beyond the face of the pleadings . . . and will construe all allegations in the light most favorable to the plaintiffs . . . .").

## CONCLUSION

Accordingly, the Court grants Defendants' motions in part and dismisses without prejudice Plaintiffs' claims against all Defendants for common-law fraud, statutory fraud, and negligent misrepresentation. The Court denies both motions with respect to all other claims. The Court grants Plaintiffs leave to amend their complaint to conform with the pleading requirements of Rule 9(b) within thirty (30) days of the date of this Order.

Signed June 2, 2008.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 13