IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY L. BILIOURIS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1591-N |
| | § | |
| SUNDANCE RESOURCES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

This Order addresses Defendant Sundance Resources, Inc.'s ("Sundance") partial motion to dismiss [239] Plaintiffs' claims, Defendants Michael E. Patman and David P. Patman's (collectively, the "Patmans") partial motion to dismiss [151] Plaintiffs' claims, and Plaintiffs' partial motion to dismiss [157] Sundance's counterclaims for declaratory judgment and contribution. For the reasons explained below, the Court grants in part and denies in part Sundance's and the Patmans' partial motions to dismiss and grants Plaintiffs' partial motion to dismiss. The Court grants in part Sundance's motion for leave to file [154] an amended answer to Plaintiffs' first amended complaint to the extent Plaintiffs do not oppose the amendment.[1]

---

[1] According to Sundance's amended certificate of conference, filed on August 25, 2008, Plaintiffs withdrew their opposition to Sundance's motion for leave to file an amended answer. However, Plaintiffs' reply in support of their partial motion to dismiss Sundance's counterclaims clarifies that Plaintiffs only consented to Sundance's addition of affirmative defenses, which is also the only amendment Sundance requested the Court's leave to file.

ORDER – PAGE 1

### I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from Plaintiffs' investment in one or more "Rig Bank Funds," which Sundance established to finance the purchase of oil and gas drilling rigs. Plaintiffs allege that Defendants systematically transferred Sundance's assets to company insiders and their affiliated companies, including the Patmans and Patman Drilling International, Inc.,[2] and accumulated large amounts of debt in Sundance's name. A more complete statement of the factual and procedural background of this case is set forth in the Court's Order of June 2, 2008. In that Order, the Court dismissed without prejudice Plaintiffs' claims for common law fraud, statutory fraud, and negligent misrepresentation, because Plaintiffs' original complaint failed to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure with respect to these claims. The Court granted Plaintiffs leave to amend their complaint to conform with Rule 9(b). Plaintiffs timely filed their first amended complaint, in which they have provided additional factual allegations to support these claims. Defendants now move to dismiss these claims, arguing that despite the amendments, these claims still fail to comply with Rules 12(b)(6) and 9(b).

### II. STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a

---

[2]Patman Drilling International, Inc. ("PDI") entered bankruptcy after Plaintiffs filed this suit. All claims against PDI have since been severed into another action.

claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974, 1965 (2007). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). In ruling on a Rule 12(b)(6) motion, the court must limit its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. PLAINTIFFS STATE CLAIMS FOR COMMON LAW FRAUD AND STATUTORY FRAUD

For the purposes of overcoming Defendants' motions to dismiss, Plaintiffs have stated claims for common law fraud and statutory fraud. The elements of common law fraud under Texas law are that: (1) a defendant made a false material representation to the plaintiff with knowledge of the statement's falsity or a reckless disregard as to its truth, (2) the defendant intended the plaintiff to rely on the statement, (3) the plaintiff relied on the statement, and (4) the statement caused damage to the plaintiff. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). A promise to do something in the future may support an action for common law fraud, just as it may support an action for statutory fraud, if the promise is made "with no intention of performing it at the time it was made." *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir. 2000) (citing

*Formosa Plastics*, 960 S.W.2d at 48). The elements of statutory fraud under Texas law are that a defendant made either: (1) a false representation of past or existing material fact for the purpose of inducing a person to enter a contract and relied upon in entering the contract, or (2) a false material promise to do an act, made with the intent not to fulfill it, made to a person to induce the person to enter a contract, and relied upon in entering the contract. TEX. BUS. & COM. CODE ANN. § 27.01(a)(1)–(2) (Vernon 2002).

### *A. Reliance*

Defendants contend that merger clauses contained in the participation agreements at issue in this case negate the element of reliance and therefore bar Plaintiffs' fraud claims. Plaintiffs point out that they have alleged that the participation and letter agreements (collectively, the "Agreements") themselves contain false statements or promises made with no intent to fulfill them and that Defendants orally made the same and related statements, which fraudulently induced Plaintiffs to enter the Agreements. Those allegations form the basis of viable fraud claims that the merger clauses cannot bar.

***1. The Agreements and Inducements to Enter.*** – Plaintiffs have adequately alleged that Defendants made some false material promises they never intended to keep in order to induce Plaintiffs to enter into the Agreements. In *Formosa*, the Texas Supreme Court held that a plaintiff may base a cause of action for fraud on alleged misstatements or false promises "irrespective of whether the promise is later subsumed in [a] contract."[3]  960

---

[3]Additionally, "[t]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the

ORDER – PAGE 4

S.W.2d at 46 (discussing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)); *see also T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971).

In paragraphs 48, 49, 54, 55, 56, 62, 64, 67, and 106 of their first amended complaint, Plaintiffs allege that Defendants, orally and in the Agreements, represented that funds loaned to Sundance would be used to buy specific drilling rigs.[4] Recitals in the Agreements state that:

> (A) SRI is offering participating Working Interests in exchange for IDECO Rig Bank with Carried Working Interest Funding for a certain high quality Drilling Rig to develop SRI's Barnett Shale Leases.
>
> (B) Investor(s) is willing to lend $4,000,000 (8 Units at $500,000 each) to SRI on the terms set forth below in connection with SRI's acquisition (including title, legal and associated expenses) of a IDECO 7555 H-44 Drilling Rig [Rig 2] from Full Circle Enterprises.
> \* \* \*
> Investor(s) is willing to lend $5,000,000 total (10 Units at $500,000 each) to SRI on the terms set forth below in connection with SRI's acquisition (including title, legal and associated expenses) of a Certified 142' Parco Triple Derrick Drilling Rig [Rig 3] with two (2) 1600 HP Triplex Mud Pumps from Pamco, Inc.
> \* \* \*

---

contract." *Formosa*, 960 S.W.2d at 47.

[4]Plaintiffs allege that Sundance representatives "stated that the funds loaned to Sundance would be used to buy a specific drilling rig," First Am. Compl. at ¶¶ 48, 54, 55, 56, 62, 64, 67, that "Michael and Pat Patman told Morrow and Sprague that if they loaned Sundance money, the money would be used to buy a drilling rig," *id.* at ¶ 49, and that "[f]or each Rig Bank loan program, Sundance represented and agreed that the principal raised would be used solely for Sundance to acquire title to a high quality drilling rig," *id.* at ¶ 106.

>Proceeds from the sale of Units [each Unit consisting of "(i) a non-interest bearing obligation on the part of the Program and SRI to repay the Unit holder his or her loan to the Program . . . and (ii) a carried working interest in all Program Wells"], totaling $6,500,000 if all ten (10) Units are sold, will be utilized by SRI for its acquisition (including title, legal and associated expenses) of a New ZJ40/2250D Triple Derrick Electric Drive Rig [Rig 4].
>
>* * *
>
>Proceeds from the sale of Units [each Unit consisting of "(i) a Non-Interest bearing obligation on the part of SRI to repay the Unit holder his or her loan . . . and (ii) until Payout, a Carried Working Interest in all Program Wells . . . drilled by SRI (or any other party contracting the use of said rig on behalf of Rig Bank Fund #6); provided however, if the rig is used for the drilling of a Well in which SRI does not own or cannot acquire a Carried Working Interest for the benefit of the Rig Bank Fund #6 Participants, SRI may in lieu thereof, pay a cash bonus directly to the Fund Participants for each Well in which no Carried Working Interest is available"] totaling $6,500,000 (if all ten (10) Units are sold) will be loaned by SRI to its affiliate PBD Ltd. and utilized for the acquisition (including title, legal and associated expenses) of a New ZJ40/2250D Triple Derrick Electric Drive Drilling Rig [Rig 6].

App. to Sundance's Reply re. Mot. to Dismiss [170] at 9, 54, 103, 165.

In paragraph 79 of their first amended complaint, Plaintiffs allege that Defendants misrepresented Sundance's intended use of loan proceeds, offers of carried working interests, loan repayment plans, and rig ownership.[5] The above-quoted language from the Agreements includes alleged misrepresentations of Sundance's intended use of loan proceeds and some

---

[5]Specifically, paragraph 79 alleges:
>[Sundance's vice president] made representations to Lionetta concerning the loan structure of the Rig Bank program, including that the loans would be repaid, the rigs would be owned by Sundance, the fact that the loan proceeds would be used only to acquire rigs, and the fact that he would be granted a carried working interest in each well drilled with the rig. . . . and that if Sundance had financial issues, the Rig Bank lenders would be protected because the rig assets would still be in Sundance.

First Am. Compl. at ¶ 79.

ORDER – PAGE 6

of the alleged misrepresentations that investors would receive carried working interests in the oil and gas wells.[6] *See id.*

With respect to repayment, the Rig 2 Agreements[7] state that:

> (2) The loan from Investor to SRI described above will be repaid in installments, with the payments of a minimum $150,000 ($18,750/Unit) to a maximum $500,000 ($62,500/Unit) after each Well is drilled by said Rig used by SRI or any other Operator who may contract out such Rig in any County until payment of Principal in full has occurred.

*Id.* at 9.

Setting aside until later in this Order the issue of whether Defendants made these alleged promises or misrepresentations with then-current intent not to fulfill them, Plaintiffs have sufficiently asserted that Defendants made the above-described false material promises or representations. Because those statements support a cause of action for fraud despite the fact that they may have been subsumed in the Agreements, the merger clauses in the Agreements are irrelevant to claims based on those statements.

***2. The Merger Clauses.*** – In paragraph 79 of Plaintiffs' first amended complaint, set forth *supra* at note 5, Plaintiffs allege that before they signed the Agreements and as an inducement to sign, a Sundance representative said Plaintiffs would be financially protected

---

[6] The Rig 2 Agreements also state that "Investors (The Fund) shall receive 4% Carried Working Interest (.50% per Unit) in all Wells drilled by the aforementioned Rig." App. to Sundance's Reply re. Mot. to Dismiss [170] at 10. The Rig 3, 4, and 6 Agreements contain similar language, except they offer 5% carried working interests. *See id.* at 55, 104, 166.

[7] The Rig 3, 4, and 6 Agreements contain similar repayment language, which is available *id.* at 54, 104, and 166.

ORDER – PAGE 7

because Sundance would hold title to the rig assets.[8] Because this representation is not also present in or contradicted by the Agreements, the Court analyzes it independently from those allegations to determine whether the merger clauses in the Agreements bar Plaintiffs' fraud claims based on this representation.[9] The merger clauses here preclude only other

---

[8]Both sides make much of the first part of this statement – that investors would be financially protected – and Defendants argue that the Agreements contradict it by stating that investors "recognize the speculative nature and risks of loss," and that investors could "suffer a complete loss of . . . [i]nvestment," and "will not have limited liability." *Id.* at 14, 59, 109, 171–72. But the statement that investors would be financially protected is not a material promise or representation at all and for that reason cannot support a fraud claim. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a)(1)–(2) and *Formosa*, 960 S.W.2d at 47 (including a false material promise or representation as an element of both statutory and common law fraud claims under Texas law). Likewise, Plaintiffs' reference in paragraphs 85–86 of their first amended complaint to speculative statements that the loans would be "low-risk" and confirming the "safety of the loan principal" is mere opinion or prediction and does not support their fraud claims. *See In re Westcap Enters.*, 230 F.3d 717, 728 (5th Cir. 2000) (explaining that a defendant is not liable for fraud when "the alleged misrepresentation is simply a nonactionable opinion") (citations omitted); *cf. Zar v. Omni Indus., Inc.*, 813 F.2d 689, 693 (5th Cir. 1987) ("The generally accepted rule in Texas jurisprudence is that future predictions and opinions, especially those regarding the future profitability of a business, cannot form a basis for fraud as a matter of law.") (citations omitted).

[9]While the recitals in the Rig 2 and 3 Agreements state the loan money would be used "in connection with SRI's acquisition (including title, legal and associated expenses)" of those rigs, the Agreements also disclaim any warranty of title to the Rigs. *Id.* at 9–10, 54–55 ("SRI shall not warrant the title of the Rig nor in and to the minerals covered by the Leases drilled."). The recitals in the Rig 4 Agreements state those loan funds "will be utilized by SRI for its acquisition (including title, legal and associated expenses) [of Rig 4]." *Id.* at 103. The Rig 4 Agreements also say investors *would not* acquire title to "the Program Prospects." *Id.* at 104. The recitals in the Rig 6 Agreements state those funds would be "loaned by SRI to its affiliate PBD Ltd." and utilized for rig acquisition. *Id.* at 165. The Rig 6 Agreements also say investors *would* acquire title to "the Program Prospects." *Id.* at 166. While these Agreements and their corresponding prospectuses indicate that the Program Prospects in each case include the working interests investors were to receive and explain that the investors would bear certain costs associated with drilling, neither the Rig 4 Agreements nor the Rig 6 Agreements specifically address who was to hold title to the rigs.

ORDER – PAGE 8

"agreements." Because the statement is an allegedly false promise or a misrepresentation and not an agreement, the limited merger clauses in the Agreements do not negate Plaintiffs' reliance on that promise or representation.

Under Texas law, parties may include a merger clause, or a disclaimer-of-reliance clause, in a contract, which effectively bars fraud claims based on extra-contractual promises or representations, but only if the totality of circumstances evinces "clear and unequivocal" intent to disclaim reliance on those promises or representations. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997). In *Schlumberger*, the Texas Supreme Court held that "[t]he contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding." *Id.*; *cf. Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995) ("The nature of the transaction and the totality of the circumstances surrounding the agreement must be considered."). If the contract and the circumstances surrounding its formation evince clear and unequivocal intent to disclaim reliance on extra-contractual promises or representations, a fraud claim is negated as a matter of law. *Schlumberger*, 959 S.W.2d at 179. In light of the surrounding circumstances[10] and an emphatic and particularized disclaimer of reliance on any "promise or agreement[,] . . . statement or representation," the *Schlumberger* court found the parties had

---

[10]In *Schlumberger*, all parties were sophisticated and represented by counsel in the negotiation of an arm's length transaction to which the disclaimer was an essential part. 959 S.W.2d 171, 180 (Tex. 1997).

clearly and unequivocally disclaimed reliance on any extra-contractual representations. *Id.* at 180.

As this Court previously noted, "Fifth Circuit opinions have consistently looked to the structure and terms of contracts in order to determine whether clear and unequivocal intent to disclaim reliance exists under *Schlumberger*." *Steinberg v. Brennan*, No. 3:03-CV-0562, 2005 WL 1837961, at *4 (N.D. Tex. July 29, 2005). For example, in *U.S. Quest*, the Fifth Circuit held that a complex and all-encompassing merger clause, which expressly disavowed the existence of any other agreement, communication, or understanding expressly contradicted allegations that other representations existed, and thereby negated the reliance element of a plaintiff's fraud claim. *See* 228 F.3d at 403; *cf. Springs Window Fashions Div. v. Blind Maker, Inc.*, 184 S.W.3d 840, 874–75 (Tex. App. – Austin 2006, no pet.) (holding a merger clause barred fraud claims that were based on representations within its scope, but refusing to construe merger clauses as a categorical bar to fraud claims).

The participation agreements before the Court in this case contain disclaimers of reliance on any other agreements not set forth in the Agreements. The relevant merger clause language is almost identical in each of the four Agreements: "The foregoing sets forth the entire agreement between the parties and there are no verbal or oral agreements between the

parties not set out herein in writing."[11] App. to Sundance's Reply re. Mot. to Dismiss [170] at 15, 60; *see id.* at 110, 173.

Noticeably, the express terms of the merger clauses include only "agreements," not other promises, as in *Schlumberger*, or other communications or understandings, as in *U.S. Quest*. *See U.S. Quest*, 228 F.3d at 403; *Schlumberger*, 959 S.W.2d at 180. A merger clause could encompass promises or other representations without expressly referencing them, but only if the agreement as a whole indicates an unequivocal disclaimer of reliance on the subject matter of such representations. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003) (holding a merger clause that only referenced "agreements" was nonetheless an unequivocal disclaimer of reliance on an extra-contractual representation when the language and intent of the agreement as a whole indicated that plaintiff did not rely on that particular representation). In *Armstrong*, the language and intent of the agreements surrounding the merger clause, as evinced by a number of other documents before that court, provided the clear and unequivocal intent necessary to find a disclaimer of reliance on extra-contractual representations. *See id.*

Here, the Court concludes that in the context of the Agreements as a whole, the narrow language of their merger clauses, while sufficient to bar Plaintiffs' reliance on extra-contractual agreements, does not evince a clear and unequivocal intent to disclaim reliance

---

[11]The Rig 4 and 6 Agreements add "(other than the Letter Agreement accompanying this Agreement)." The Court is considering the letter and participation agreements as a whole, therefore the difference is immaterial to the Court's analysis of these merger clauses.

ORDER – PAGE 11

on representations that may have induced Plaintiffs to enter the Agreements. As a result, Plaintiffs are entitled to show that Defendant in fact made those representations and that Plaintiffs relied on them.

### B. Rule 9(b)

After repleading their claims with particularity in their first amended complaint, Plaintiffs have met the requirements of Rule 9(b) and stated claims for common law and statutory fraud.

***1. Particularity.*** – Plaintiffs' claims for common law fraud and statutory fraud, as stated in Plaintiffs' first amended complaint, meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires plaintiffs who allege fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To plead fraud successfully under Rule 9(b), a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Ultimately, the plaintiff should specify the "who, what, when, where, and how" of the alleged fraud. *Id.* at 179.

Plaintiffs' first amended complaint provides a separate paragraph setting forth each plaintiff's individual allegations with respect to each of the four Rig Bank loans agreements at issue. *See* First Am. Compl. at ¶¶ 47–96. Plaintiffs have identified which defendants engaged in alleged conduct, the contents of the allegedly false representations, and the dates or time periods and places the alleged conduct occurred. Plaintiffs have also provided

reasons why the alleged conduct was fraudulent. *See id.* at ¶¶ 102–121. Chief among these reasons are allegations of self dealing, which are replete in Plaintiffs' first amended complaint. *E.g.*, *id.* at ¶ 104 ("[T]he Patmans transferred Rig #1 from Sundance to themselves."), ¶ 107 ("[T]he funds raised through the Rig Bank programs were transferred to Patman Drilling or to the Patmans' family members. In addition, Sundance expended over $2 million for real estate purchased in the names of the Patmans individually, Pat Patman's wife, and . . . a Patman Drilling investor."), ¶ 108 ("It also appears that Pat Patman used Sundance's funds to purchase his home."), ¶ 112 ("Sundance paid for two drilling rigs on behalf of Patman Drilling.").

As a result, Plaintiffs have stated their claims for common law fraud and statutory fraud with requisite particularity under Rule 9(b).

***2. Intent Not To Perform.*** – Notably, the statements underlying Plaintiffs' fraud claims are allegedly false promises and not false representations of material fact. A false promise may support a common law or statutory fraud claim, but only if the promise was made with the intent not to fulfill it. Because Plaintiffs have alleged with particularity the existence of extra-contractual representations upon which they were entitled to rely, the Court must now determine whether Plaintiffs have sufficiently alleged that Defendants made these representations with then-present intent not perform.

> A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *Schindler v. Austwell Farmers Coop.*, 841 S.W.2d 853, 854 (Tex. 1992). However, the mere failure to perform a contract is not evidence of fraud. *See id.* Rather, [Plaintiff] had to present evidence that

> [Defendant] made representations with the intent to deceive and with no intention of performing as represented. *See Spoljaric*, 708 S.W.2d at 434; *Stanfield*, 462 S.W.2d at 272; *see also T.O. Stanley Boot Co.*, 847 S.W.2d at 222; *Crim Truck & Tractor*, 823 S.W.2d at 597. Moreover, the evidence presented must be relevant to [Defendant's] intent at the time the representation was made. *Spoljaric*, 708 S.W.2d at 434.

*Formosa*, 960 S.W.2d at 48. "However, [failure to perform] is a circumstance to be considered with other facts to establish intent." *Spoljaric*, 708 S.W.2d at 435.

Rule 9(b) permits plaintiffs to plead intent generally, but plaintiffs must nonetheless set forth specific facts that support an inference of fraud. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 565 (5th Cir. 2002); *see Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (explaining that plaintiffs may plead intent not to fulfill a promise by alleging facts demonstrating a defendant's motive to commit fraud or, if a motive is not apparent, by identifying circumstances that indicate conscious behavior on defendant's part).

In *Formosa*, the plaintiff demonstrated intent by providing the admission of the defendant's own employee that, prior to signing the contract, the defendant made a decision to act in direct contravention to its terms and to other statements upon which the defendant knew the plaintiff would rely in entering the contract. *See* 960 S.W.2d at 48.

In *Herrmann Holdings*, the Fifth Circuit held that, standing alone, allegations that the defendant breached its obligations were inadequate to support an inference of intent. *See* 302 F.3d at 566. Notwithstanding the defendant's breach, the plaintiffs failed to provide factual allegations demonstrating the defendant's motive or other circumstances indicative of the

ORDER – PAGE 14

defendant's conscious behavior. *Id.* at 565–66. The "possible motives" the plaintiffs alleged were either insignificant or unsupported by the facts in their complaint. *Id.* at 565. As a result, the court upheld dismissal under Rule 9(b) for failure adequately to plead fraudulent intent. *See id.* at 566.

Other cases, including the instant action, lie between these two extremes. In *Spoljaric v. Percival Tours, Inc.*, for example, the Texas Supreme Court held that "'[s]light circumstantial evidence' of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." 708 S.W.2d at 435 (quoting *Maulding v. Niemeyer*, 241 S.W.2d 733, 738 (Tex. Civ. App. – El Paso 1951, orig. proceeding)). That court held evidence that defendant made a promise, in light of his denial of making that promise, provided circumstantial evidence of fraudulent intent, which was sufficient to submit the issue to a jury. *Id.* at 435–36.

Here, Plaintiffs allege that Defendants engaged in a scheme of self-dealing that would demonstrate greed or self-interest as a clear motive on the part of Defendants. At the very least, the allegations of self-dealing provide circumstantial evidence of fraudulent intent, which, considered along with the fact of Defendants' immediate nonperformance, supports Plaintiffs' allegations of intent.

Although the lack of factual allegations in *Tuchman v. DSC Communications Corp.* ultimately led the Fifth Circuit to conclude that the plaintiff in that case did not sufficiently demonstrate intent, the court indicated that if plaintiffs had alleged that defendants took specific actions to artificially inflate the company's condition or concealed or misrepresented

ORDER – PAGE 15

information, such allegations would have supported an inference of the defendant's motive or conscious behavior. *See* 14 F.3d at 1068–69. Here, unlike in *Tuchman*, Plaintiffs allege that Defendants concealed or misrepresented information that was material to their decision to invest – specifically, who would purchase and own the drilling rigs. This allegation further supports the Court's finding that Plaintiffs have adequately alleged existence of a fact issue with respect to Defendants' intent not to perform.

As a result, Plaintiffs have stated claims for common law fraud and statutory fraud and thereby overcome Defendants' motion to dismiss those claims.

### IV. PLAINTIFFS DO NOT STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION

Plaintiffs have not stated a claim for negligent misrepresentation. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' negligent misrepresentation claims. Unlike claims for fraud, claims for negligent misrepresentation are unavailable "[w]hen the injury is only the economic loss to the subject of a contract itself." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991). Here, the only damages Plaintiffs plead is economic loss related to the subject matter of the Agreements. Specifically, Plaintiffs seek (1) repayment for wells Plaintiffs funded, (2) fair market value of Plaintiffs' share of working interests, (3) unpaid loan balances, and (4) consequential damages. First Am. Compl. at ¶ 151. Because no remedy is available for Plaintiffs' negligent misrepresentation claims, the Court dismisses those claims with prejudice.

## V. SUNDANCE'S ADDITION OF COUNTERCLAIMS IS UNTIMELY

Sundance cannot add counterclaims without leave of Court. Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure permits a party to amend its pleading once as a matter of course before being served with a responsive pleading. Sundance did not amend its pleading before Plaintiffs filed and served Sundance with an answer to Sundance's original counterclaim on November 16, 2007. Therefore, Rule 15(a)(1)(A) does not provide a basis for Sundance's addition of counterclaims on August 4, 2008. Alternatively, Rule 15(a)(2) permits a party to amend its pleading with the other party's written consent or the Court's leave. Without obtaining Plaintiffs' written consent or seeking the Court's leave to amend, Sundance filed an answer to Plaintiffs' first amended complaint on August 4, 2008. Sundance's answer added two additional counterclaims that were not present in Sundance's answer to Plaintiffs' original complaint. Then, Sundance filed a motion for leave to file an amended answer to add additional affirmative defenses. While Plaintiffs acknowledge that they do not oppose Sundance's motion for leave to the extent Sundance seeks to add affirmative defenses, Plaintiffs did not consent to Sundance's addition of new counterclaims in its answer to Plaintiffs' first amended complaint. Additionally, Plaintiffs correctly point out that Sundance never sought leave to amend its pleading to add new counterclaims. The Court's Order of June 2, 2008, which granted Plaintiffs leave to amend their complaint to conform with the pleading requirements of Rule 9(b), did not invite Sundance to amend its pleading by including additional counterclaims in its answer in contravention of Rule 15(a). Accordingly, the Court grants in part Sundance's motion for leave to file an amended answer

to the extent Plaintiffs do not oppose the amendment. Because Plaintiffs oppose the inclusion of counterclaims for declaratory judgment and contribution, which appeared without the Court's leave in the answer Sundance seeks to modify, the Court strikes paragraphs 192–210 from Sundance's amended answer and counterclaims.

## CONCLUSION

Accordingly, the Court grants in part and denies in part Sundance's and the Patmans' partial motions to dismiss and dismisses with prejudice Plaintiffs' claims against all Defendants for negligent misrepresentation. The Court grants Plaintiffs' motion and dismisses with prejudice Sundance's counterclaims for declaratory judgment and contribution. The Court grants in part and denies in part Sundance's motion for leave to file an amended answer to Plaintiffs' first amended complaint.

Signed March 4, 2009.

_____
David C. Godbey
United States District Judge