IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY L. BILIOURIS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1591-N |
| | § | |
| SUNDANCE RESOURCES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses the Plaintiffs' motion for judgment [288], the Plaintiffs' motion for partial judgment as a matter of law [289], and the Defendants' motion for judgment as a matter of law [291]. For the reasons provided below, the Court grants all of the motions in part.

### I. ORIGINS OF THE PLAINTIFFS' CLAIMS

This case arises out of the Plaintiffs' investment in one or more "Rig Bank Funds," which the Defendants (collectively, "Sundance") established to finance the purchase of oil and gas drilling rigs. The Plaintiffs collectively loaned Sundance over $14 million for the purchase of five rigs. In exchange, Sundance allegedly promised the Plaintiffs carried working interests in any wells drilled using those rigs and guaranteed that all loan principal amounts would be repaid in full. Although Sundance initially made principal and working

interest payments as promised, completely repaying the principal amounts of some loans, it later fell behind and eventually stopped making payments to the Plaintiffs altogether.

According to the Plaintiffs, Sundance failed to make these payments because its executives systematically transferred its assets to company insiders and their affiliated companies and accumulated large amounts of debt in Sundance's name. This scheme allegedly shifted the funds acquired from Plaintiffs' loans to Sundance insiders while simultaneously driving the company into insolvency, leaving nothing to satisfy the company's obligations to the Plaintiffs. In fact, Sundance executives continued to transfer the company's assets, including $4 million in cash, to insiders even after Sundance became insolvent.

Plaintiffs asserted the following claims against Sundance and its individual executives: breach of contract, common law fraud, statutory fraud, fraudulent transfer, civil conspiracy, joint enterprise, alter ego, and violation of the Section 33 of Texas Securities Act. The case came before the Court for jury trial on May 26, 2009, which lasted almost two weeks. On June 4, 2009, at the conclusion of the parties' cases, the Court found that there was no genuine issue of material fact with respect to Sundance's breach of contract for failure to pay the Plaintiffs the minimum principal repayment established in its agreements with the Plaintiffs. Thus, the Court declined to submit this portion of the Plaintiffs' breach

of contract claims to the jury.[1]  The Court then presented 13 questions to the jury, which it answered substantially in favor of the Plaintiffs.

Both parties now seek partial judgment as a matter of law.  Sundance asks the Court to overturn the jury verdict on virtually every count because the jury lacked sufficient evidence to find in Plaintiffs' favor.  Plaintiffs seek judgment in accordance with the jury verdict, except with respect to the jury's finding that Sundance did not breach its agreement with the Plaintiffs when it failed to assign carried working interests in the wells it drilled and completed.

For the reasons provided below, the Court enters judgment in accordance with the jury verdict, with two exceptions.  First, the Court finds as a matter of law that Defendants breached their contract with the Plaintiffs that participated in Rig Bank 4 by failing to assign carried working interests in the wells drilled and completed by the Rig Bank 4 rig.  Second, the Court finds that the plaintiffs who elected not to testify at trial cannot recover on their fraud claims because the jury lacked individualized evidence of reliance to support its verdict with respect to those Plaintiffs.

---

[1]Sundance's failure to satisfy the minimum principal repayment set out in its agreements with the Plaintiffs was a straightforward breach of contract.  The evidence offered at trial, including written agreements between Sundance and the Plaintiffs (the "Rig Bank Agreements"), clearly established Sundance's obligation to pay these amounts, which it failed to do.  Thus, the Court did not present the issue to the jury.

Although the Court encouraged the parties to address the matter in postjudgment motions, neither party did.  The Court now affirms its finding as a matter of law that Sundance breached its agreement with the Plaintiffs by failing to repay the minimum principal amounts set out in the Rig Bank Agreements.

## II. STANDARD FOR JUDGMENT AS A MATTER OF LAW

A jury's verdict is "afforded great deference." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004). Thus, "judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Dearmond v. Wal-Mart La. LLC*, 335 Fed. App'x 442, 444 (5th Cir. 2009) (quoting *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 282 (5th Cir. 2007)). In other words, "if reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." *Pineda*, 360 F.3d at 486. In making this determination, a court must "review all of the evidence from the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." *E. Tx. Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, 575 F.3d 520 (5th Cir. 2009). However, "a jury's freedom to draw reasonable inferences does not extend so far as to allow the jury to draw an inference which amounts to mere speculation and conjecture." *Thompson v. Connick*, 578 F.3d 293, 297 (5th Cir. 2009) (quoting *Nichols Constr. Corp. v. Cessna Aircraft Co.*, 808 F.2d 340, 352 (5th Cir. 1985)).

### III.  THE COURT GRANTS JUDGMENT IN ACCORDANCE WITH
### the VERDICT WITH TWO EXCEPTIONS

After seven days of trial testimony by over thirty witnesses, Sundance asserts that the jury lacked sufficient evidence to find in Plaintiffs' favor on every one of Plaintiffs' claims. This is an untenable argument.  In general, the evidence on the record is more than sufficient to support the jury verdict.  Weighing the evidence in favor of the nonmoving party, the facts and inferences are not so overwhelmingly in the Defendants' favor that reasonable jurors could not reach a contrary conclusion.  Thus, the Court upholds the jury verdict on all counts – common law fraud, statutory fraud, fraudulent transfer, civil conspiracy, joint enterprise, alter ego, and violation of the Section 33 of Texas Securities Act – with the two exceptions described below.

### *A. Sundance Breached Its Agreement to Pay the*
### *Participants in Rig Bank 4 Carried Working Interests*

In return for their loans to various "Rig Bank Funds," the Plaintiffs expected to receive carried working interests in any wells drilled using rigs obtained by a rig bank fund to which they loaned money, until the time that their loan principal was repaid in full. Sundance failed to satisfy this expectation.  The Plaintiffs now seek judgment as a matter of law that Sundance's failure to pay a carried working interest in wells drilled and completed by Rig Bank Fund rigs constituted a breach of contract.

The parties do not dispute that Sundance drilled and completed wells.  However, Sundance drilled some wells in locations where it did not have an interest in the underlying

lease. At trial, Sundance argued that it did not agree to pay carried working interests in those

wells. Rig Bank Agreements 2, 3, and 4 state:

> **Rig Bank Agreement 2**: "Investors (The Fund) shall receive
> 4% Carried Working Interest (.50% per Unit) in all Wells drilled
> by the aforementioned Rig used by SRI in any County until
> payment in full of Principal . . .";

> **Rig Bank Agreement 3**: "Investors (The Fund) shall receive
> 5% Carried Working Interest (.50% per Unit) in all Wells drilled
> by the aforementioned Rig used by SRI in any County until
> payment in fill of Principal . . .";

> **Rig Bank Agreement 4**: "Each Investor Loan will be repaid to
> the Investor as each Program Well is drilled. A 'Program Well'
> means an oil and/or gas well having all of the following
> characteristics: (i) drilled by SRI (or any other operator), (ii) in
> any county in any state, (iii) using Drilling Rig #4, and (iv) at
> any time prior to repayment of all principal on the Investor
> Loans (referred to as 'Payback'). After Payback, there will be no
> additional Program Wells, but each Investor will retain its pro
> rata share of Carried Working Interests assigned in Program
> Wells until the date of Payback.

> Each Investor shall receive a .50% ..Carried Working Interest..
> per Unit (5% for the entire Program) in all Program Wells."

Because the Rig Bank Agreements are ambiguous as to the disputed issue, the Court

submitted the following question to the jury: "Did [Sundance] and Plaintiffs agree that

[Sundance] was required to convey to Plaintiffs a carried working interest in every well

drilled by the [corresponding] rig bank rig and completed even if Sundance did not own an

interest in the lease where the well was drilled?" Ct.'s Charge to the Jury [284] at 9. With

respect to Rig Bank Agreements 2 and 3, the jury answered no. *Id.* With respect to Rig

Bank Agreement 4, it answered yes. *Id.* In other words, the jury determined that Sundance had a duty to pay carried working interests on *only those wells* drilled and completed by rigs associated with Rig Bank Funds 2 and 3 in which it had an interest in the underlying lease. With respect to wells drilled and completed by rigs associated with Rig Bank Fund 4, on the other hand, the jury found that Sundance had a duty to pay carried working interests on *all* wells. Based on the evidence presented at trial on this issue, the Court finds that reasonable jurors could differ in their interpretation of the evidence and, therefore, upholds the jury verdict on this question.

The Court then asked the jury to determine breach: ""Did SRI fail to comply with its agreement to assign carried working interests in completed wells to Plaintiffs?" *Id.* at 10. At trial, the Plaintiffs asserted and Sundance did not dispute[2] that Sundance failed to pay the Plaintiffs carried working interests in any of the wells it drilled and completed. Still, the jury answered no with respect to all Rig Bank Funds. *Id.* Because the record is unclear regarding which wells Sundance drilled on its own leases and which it did not, reasonable jurors could find that Sundance complied with its obligations on Rig Bank Funds 2 and 3. However, the jury's answer with respect to Rig Bank Fund 4 is wholly unsupported by the evidence. As discussed above, the jury determined that Sundance had a duty to pay carried working interests on *all* wells drilled and completed by rigs associated with Rig Bank Fund 4, regardless of whether it owned an interest in the underlying lease. Sundance acknowledged

---

[2]Tr. Transcript, Vol. 9, Testimony of David Jones.

ORDER – PAGE 7

that it failed to do so.  Thus, the jury's conclusion that the Defendants did not breach their contract with the Plaintiffs that participated in Rig Bank 4 is unsupported by the evidence. Accordingly, the Court grants judgment as a matter of law in favor of the participants of Rig Bank 4 on their claims for breach of contract based on Sundance's failure to pay carried working interests on wells it drilled and completed.

### B. Plaintiffs Gilbert and Rosalie Small Cannot Recover for Fraud

In addition to breach of contract, the Plaintiffs claimed that Sundance committed common law fraud.  The Court submitted this issue to the jury, which returned a verdict in favor of various plaintiffs, including Gilbert and Rosalie Small, two plaintiffs who elected not to testify at trial.  Sundance argues that these plaintiffs failed to present sufficient evidence to support the jury verdict on their fraud claims.  The Court agrees.

Based on the instructions it received, the jury could have based its common law fraud findings on one of two theories: fraud by material misrepresentation or fraud by non-disclosure.  Ct.'s Charge to the Jury [284] at 12-14.  Both theories require a plaintiff to establish reliance.[3]  Reliance "is an essential element of any fraud claim."  *O & B Farms, Inc.*

---

[3]In order to prove fraud by material misrepresentation, a plaintiff must show that: (1) the defendant made a material misrepresentation; (2) the misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) the defendant made the representation with the intent that the other party would act on that representation; and (4) the plaintiff relied on the misrepresentation and thereby suffered injury.  *See* TEXAS PATTERN JURY CHARGES 105.2 (modified); Ct.'s Charge to the Jury [284] at 11-14.

In order to prevail on a claim for fraud by failure to disclose a material fact, a plaintiff must show that a party had a duty to disclose and (1) the party failed to disclose a material

*v. Black*, Civil Action No. 14-08-595, 2009 WL 3461182, at *2 (Tex. App. – Houston [14th Dist.] Oct. 29, 2009, pet. filed) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001); *Gray v. Waste Res., Inc.*, 222 S.W.3d 522, 524 (Tex. App. – Houston [14th Dist.] 2007, no pet.)). "A plaintiff establishes reliance by showing the defendant's acts and representations induced him to either act or refrain from acting, to his detriment." *Van Marcontell v. Jacoby*, 260 S.W.3d 686, 691 (Tex. App. – Dallas 2008, no pet.) (citing *Prospect High Income Fund v. Grant Thornton, LLP*, 203 S.W.3d 602, 614 (Tex. App. – Dallas 2006, pet. denied)). The parties dispute whether Gilbert and Rosalie Small presented sufficient evidence to demonstrate reliance under either theory.

The reliance element of a fraud claim requires an individualized inquiry. Evidence of reliance "is often different for each individual, depending on how and what each was told, what each knew of the matter, and how each reacted . . ." *Exxon Mobil Corp. v. Gill*, 299 S.W.3d 124, 127 (Tex. 2009) (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 (Tex. 2002)) (noting that this individualized inquiry precludes the predominance of common issues required to maintain a class action). "Reliance, or the lack thereof, can be shown only by demonstrating the person's thought processes in reaching the decision." *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 355 (Tex. App. – Dallas, 2004, pet. denied). Thus,

---

fact within the knowledge of that party; (2) the party knew that the other party is ignorant of the fact and did not have an equal opportunity to discover the truth; (3) the party intended to induce the other party to take some action by failing to disclose the fact; and (4) the other party suffers injury as a result of acting without the knowledge of the undisclosed fact. *See* TEXAS PATTERN JURY CHARGES 105.4; Ct.'s Charge to the Jury [284] at 11-14.

"[p]roof of reliance or lack of reliance necessarily requires an individualized determination because, under all the same facts and circumstances, one person may have relied on the misrepresentation in reaching a decision while another did not rely on it in reaching the same decision." *Id.* at 355.

At trial, counsel for the absent plaintiffs offered no individualized evidence to show that they relied on material misrepresentations or omissions by Sundance in agreeing to the contracts at issue.[4]   Rather, the Plaintiffs argue that it was "reasonable for the jury to conclude that [the absent plaintiffs] were in the same proverbial boat as those plaintiffs who testified." Pls.' Resp. to Defs.' Mot. for Judgment as a Matter of Law [295] at 11.  In support of this argument, they cite the "invoice theory" of reliance.  This theory asserts that "the act of paying [an invoice] demonstrates that [the customers] are relying upon the charge as what it states . . ." *Tex. S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 234 (Tex. App. – Corpus Christi 2008, no pet.).  By analogy, the plaintiffs argue that the jury could reasonably infer that the absent plaintiffs relied on the Defendants' representations contained within the Rig Bank Agreements because they signed the contracts.  To the extent this theory holds at all,[5] it does not apply in this far more complex contractual context, where a wide range of terms and considerations were in play at the time the absent plaintiffs allegedly relied on the

---

[4]For instance, the absent plaintiffs did not provide any deposition testimony indicating that they relied on representations or omissions by Sundance in signing the contracts.

[5]For a detailed account and critique of this theory in the context of class certification, see *Gomez*, 267 S.W.3d at 234-39.

ORDER – PAGE 10

representations at issue.  Thus, the Court finds that the jury lacked sufficient individualized evidence of reliance to reasonably find in favor of Gilbert and Rosalie Small on their fraud claims and grants judgment as a matter of law in favor of the Defendants with respect to those claims.

CONCLUSION

For the reasons provided above, the Court grants judgment in accordance with the verdict on all questions it submitted to the jury, except with regard to (1) the breach of contract claims asserted by the Plaintiffs that participated in Rig Bank 4 due to Sundance's failure to assign carried working interests in the wells drilled and completed by the Rig Bank 4 rig, and (2) the fraud claims raised by Gilbert and Rosalie Small.  Accordingly, the Court grants the parties' motions in part.  The Plaintiffs may submit affidavits regarding their attorneys' fees thirty (30) days from the date of this Order.

Signed March 12, 2010.

David C. Godbey
United States District Judge