IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY L. BILIOURIS, *et al.*, | § | |
| | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1591-N |
| | § | |
| SUNDANCE RESOURCES, INC., *et al.*, | § | |
| | § | |
|    Defendants. | § | |

# ORDER

This Order addresses the Plaintiffs' motion for attorneys' fees [306] and the Defendants' motion to strike [307]. Because the Plaintiffs provide a lodestar calculation reasonable for this long and complex case, the Court grants the Plaintiffs' motion and orders that the Defendants pay $1,574,744.50 in attorneys' fees and an additional $100,000 for fees incurred during appeal. And, because the parties agreed to submit attorneys' fees post-trial, the Court further denies the Defendants' motion to strike.

## I. ORIGINS OF THE SUNDANCE LITIGATION AND JUDGMENT

This dispute arises out of the ongoing litigation between the Plaintiffs, Michael and David Patman, and business entities under the Patmans' control. In the underlying action, the Plaintiffs asserted various claims against the Defendants, including breach of contract, common law fraud, statutory fraud, fraudulent transfer, civil conspiracy, joint enterprise, alter ego, and violation of section 33 of the Texas Securities Act. After nearly two years of litigation, including substantial discovery and motions practice, the case went to trial in May

2009. The trial lasted two weeks and culminated in a jury award in the Plaintiffs' favor for over $14 million in fraud, statutory fraud, and breach of contract damages. With the exception of two issues on which the Court granted judgment as a matter of law, the Court entered judgment in accordance with the jury verdict. *See* Order of Mar. 12, 2010 [297]; Am. Final J. [331]. The Plaintiffs subsequently moved to collect attorneys' fees with respect to their statutory fraud and breach of contract claims. The Defendants oppose the motion, arguing primarily that the Plaintiffs failed to properly segregate their fee request as required by Texas law.

## II. ATTORNEYS' FEES UNDER FIFTH CIRCUIT PRECEDENT AND TEXAS LAW

In determining how much to award when a federal statute authorizes the recovery of attorneys' fees, courts first calculate a "lodestar" amount by multiplying a reasonable billing rate by the number of hours reasonably spent litigating the successful claim. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). The court then increases or decreases this lodestar amount based on the "*Johnson* factors": (1) the time and labor required to litigate the case, (2) the novelty and difficulty of the questions involved, (3) the skill required to litigate the case, (4) whether taking the case precluded the attorney from other employment, (5) the customary fee for similar work in the community, (6) the fee or percentage of recovery the attorney quoted to the client, (7) whether the client or case required expedited legal work, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirabilty" of the case, (11) the nature and length of the attorney-client relationship,

and (12) awards made in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). "State law," however, "controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Texas law provides that plaintiffs in breach of contract and statutory fraud actions may recover attorneys' fees. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) ("reasonable" attorneys' fees for breach of contract claims) (Vernon's 2009); TEX. BUS. & COMMERCE CODE ANN. § 27.01(e) ("reasonable and necessary" attorneys' fees for statutory fraud claims) (Vernon's 2009). A claimant seeking attorneys' fees in a breach of contract case must "be represented by an attorney," "present the claim to the opposing party or to a duly authorized agent of the opposing party," and "must not have been tendered [payment] before the expiration of the 30th day after the claim [was] presented." TEX. CIV. PRAC. & REM. CODE ANN. § 38.002. In breach of contract cases, courts presume the reasonableness of an attorney's "usual and customary fee" and "liberally construe[]" the attorneys' fee statute "to promote its underlying purposes." TEX. CIV. PRAC. & REM. CODE. ANN. §§ 38.003, 38.005. In other cases, courts treat reasonableness as a fact question and look to a variety of factors closely analogous to the *Johnson* factors to determine the reasonableness of an attorneys' fee request. *See Smith v. Smith*, 757 S.W.2d 422, 424-25 (Tex. App. – Dallas 1988, writ den.).

Parties petitioning for attorneys' fees "have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). But, "when the causes of

action involved in the [underlying] suit are dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11-12 (Tex. 1991) (quoting *Gill Sav. Ass'n v. Chair King, Inc.*, 783 S.W.2d 674, 680 (Tex. App. – Houston 1989)). This does not mean "that a common set of underlying facts necessarily ma[kes] all claims arising therefrom 'inseparable' and all legal fees recoverable"; rather, a fee claimant need not segregate fees "when discrete legal services advance both a recoverable and unrecoverable claim." *Gullo Motors*, 212 S.W.3d at 313-14. That is, "[t]o the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service." *Id.* at 313. Thus, Texas law recognizes "that many if not most legal fees in such cases cannot and need not be precisely allocated to one claim or the other." *Id.* A claimant's estimated amount of time spent on a recoverable claim expressed as a percentage of total time spent on the entire case suffices as appropriate fee segregation. *Id.* at 314 & n.83 (collecting cases). And, a recovery for attorneys' fees may include fees incurred on appeal. *See, e.g.*, *Smith*, 757 S.W.2d at 426 (citing *Pleasant Hills Children's Home v. Nida*, 596 S.W.2d 947, 953 (Tex. App. – Fort Worth 1980, no writ)).

### III. THE PLAINTIFFS PRESENT A REASONABLE LODESTAR CALCULATION

The Plaintiffs provide an initial lodestar amount of $2,279,635, calculated by adding together fees net of expenses from the King & Spaulding firm for $1,403,975.50, based on 4128.8 billed hours, and from the Friedman & Feiger firm for $875,660, based on 3072 billed

hours. Mot. at 6-7. The Court, however, sets the initial lodestar as $2,249,635, because the Plaintiffs provided that amount first in their motion, *id.* at 3, and again in their supporting affidavit. Haynes Aff. at 5. The King & Spaulding figure works out to an average hourly rate of approximately $340 and the Friedman & Feiger calculation to approximately $285 per hour, although the range of hourly rates for the primary attorneys at each firm ranged from $192 to $525 per hour at King & Spaulding and $200 to $600 per hour at Friedman & Feiger. Mot. at 6. As they must under Texas law, the Plaintiffs have segregated recoverable from unrecoverable fees, estimating that counsel spent seventy percent of their billed time on recoverable causes of action. *Id.* at 3. Multiplying the initial lodestar of $2,249,635 by seventy percent, the Court arrives at the same revised lodestar as the Plaintiffs – $1,574,744.50.

Based on the Court's familiarity with the history of this case – now entering its fourth year – a review of the billing records and affidavits, and in consideration of the substantial discovery, motion practice, and two week jury trial, the Court finds the Plaintiffs lodestar reasonable. This reflects the Court's consideration of those *Johnson* factors necessarily "subsumed" in the lodestar calculation. *Hensley*, 461 U.S. at 434 n.9; *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1084 (5th Cir. 1985) (collecting cases). Here, the lodestar includes the time and labor required to litigate the case, the customary fee charged for similar work in the community, and the experience, reputation, and ability of the attorneys involved, *see* Haynes Aff., with the attorneys' hourly billing rates resulting from a combination of the latter two factors.

## IV. THE *JOHNSON* FACTORS DO NOT COUNSEL LODESTAR ADJUSTMENT

The Court now turns to address the *Johnson* factors not subsumed in the lodestar calculation. The Court finds inapplicable the factors concerning the fee or percentage recovery quoted to the client, the "undesirability" of the case, and the nature and length of the attorney-client relationship. The remaining factors strongly support the reasonableness of the lodestar calculation but do not militate in favor of a departure from that amount.

Addressing first the factors pertaining to the novelty and difficulty of the questions involved and the skill required to litigate the case, the Court finds that these factors support the lodestar calculation. This case involved the pursuit of numerous claims against multiple defendants on behalf of over two dozen plaintiffs for several years and implicated complex issues spanning multiple areas of the law. The parties engaged in substantial discovery and motions practice, took and defended many depositions, prepared numerous witnesses, and brought the case on for a two week jury trial. The parties subsequently have filed and contested several post-trial motions, some requiring additional discovery. In short, this case represents quintessential complex commercial litigation, a conclusion already reflected in the lodestar calculation.

Examining next the factors concerning whether the case precluded the attorneys involved from other employment or required expedited legal work, the Court concludes that these factors also support the lodestar. Counsel for the Plaintiffs claim that the scope and nature of this case precluded them from working on other matters, especially those attorneys from Friedman & Feiger who took the case over midstream and caught up to speed while

simultaneously conducting discovery and preparing for trial. Given the Court's earlier observations about this case's complexity, the Court sees no reason to doubt the veracity of counsels' assertions.

Finally, the Court looks to the amount involved and results obtained and then compares them to awards made in similar cases. Here, the jury awarded the Plaintiffs over $14 million in damages. Although the bulk of the total damage award came from fraud claims on which the Plaintiffs cannot recover attorneys' fees, the intertwined underlying facts of the case justify looking at the full award for lodestar purposes. Given the number of parties, claims, and amounts involved, the award appears reasonable and in line with those obtained in similarly complex commercial disputes. Furthermore, the jury rendered judgment substantially in favor of Plaintiffs on almost all of their claims, suggesting that Plaintiffs' counsel reasonably earned their fee. *See, e.g.*, *Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.") (citing *Davis v. County of Los Angeles*, 1974 WL 180 (C.D. Cal. 1974)). Thus, the Court leaves the lodestar untouched.

## V. THE DEFENDANTS' OBJECTIONS FAIL

The Defendants make several arguments in opposition to the Plaintiffs' fee request, all of them ultimately unavailing. First, the Defendants contend that the Plaintiffs have failed to segregate their fee request not only between recoverable and nonrecoverable claims, but

between prevailing plaintiffs and defendants and among successful and unsuccessful claims by party. Defs.' Resp. at 4-6, 8-12. This, however, asks for a more precise allocation of fees than required under Texas law. As an initial matter, the intertwined nature of the facts, claims, and transactions at the heart of the underlying action place this case within the ambit of the *Sterling* exception to the duty to segregate, which "arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Sterling*, 822 S.W.2d at 11 (quoting *Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624-25 (Tex. App. – Dallas 1987, writ den.)).[1] That exception requires that the Plaintiffs exclude only those fees that "relate solely to a claim for which such fees are unrecoverable." *Gullo Motors*, 212 S.W.3d at 313. The Plaintiffs segregated the amount of time spent on recoverable and unrecoverable claims by estimating that approximately seventy percent of their time was spent pursuing recoverable claims for statutory fraud and breach of contract, Mot. at 2-3, an acceptable practice under Texas law. *See Gullo Motors*, 212 S.W.3d at 314 & n.83 ("[The *Gullo Motors*] standard does not require more precise proof of attorney's fees than for any other claims or expenses. . . .[A]n opinion would have sufficed stating that, for example, 95 percent of [the attorney's] drafting time would have been necessary even if there had been no fraud claim.").

---

[1] *Gullo Motors* noted that "[w]hen faced with fraud and breach of contract claims like those here, some [courts] have held the claims inextricably intertwined, and others just the opposite." 212 S.W.3d at 312 & nn.78, 79 (collecting cases). As explained elsewhere, the Court holds that the facts and claims in this case are inextricably intertwined.

The Defendants argue that Texas law requires further segregation between prevailing and nonprevailing plaintiffs and between successful and unsuccessful claims by plaintiff, and point to *Sterling* and three other cases, two cited in *Sterling*, for support: *Verette*,[2] *Stone*,[3] and *Ralston Oil*.[4] Defs.' Resp. at 9-12. These cases all predate and are readily distinguishable from *Sterling*. The *Sterling* exception, as modified by *Gullo Motors*, addresses the attorneys' fees requests at issue in those cases. In *Verette*, only one of the original plaintiffs qualified to recover attorneys' fees because one plaintiff settled and the other did not request fees. The claimant apparently sought the entire fee charged to all three original plaintiffs, made no effort to segregate the fees among recoverable and nonrecoverable causes of action, and failed to ask that the trier of fact (a jury) make a determination. *Verette*, 645 S.W.2d at 568. Similarly, the claimant's request for "'interwoven'" attorneys' fees in *Stone* lacked any evidence of fee segregation and "did not allege or offer any proof of the amount of money that would constitute reasonable attorney's fees," even in relation to the only defendant from which the claimant could recover per the trial court's instruction. *Stone*, 537 S.W.2d at 63-64. Indeed, *Sterling* cited *Verette* and *Stone* not for the propositions advanced by the Defendants, but for the idea that claimants cannot properly recover fees if they make no attempt to separate out settling and nonsettling defendants. *Sterling*, 822 S.W.2d at 11.

---

[2]*Verette v. Travelers Indem. Co.*, 645 S.W.2d 562 (Tex. App. – San Antonio 1982, writ ref'd n.r.e.).

[3]*Stone v. Lawyers Title Ins. Co.*, 537 S.W.2d 55 (Tex. App. – Corpus Christi 1976), *rev'd* 554 S.W.2d 183 (Tex. 1977).

[4]*Ralston Oil & Gas Co. v. Gensco, Inc.*, 706 F.2d 685 (5th Cir. 1983).

And, finally, in *Ralston Oil*, the Fifth Circuit remanded the attorneys' fee award to the trial court for further consideration because the claimants failed to segregate their request among recoverable and unrecoverable claims. The panel there expressly noted that the claimants were not barred from recovery. *Ralston Oil*, 706 F.2d at 697 ("It may be that the court will determine that the [original fee award] was correct; or, upon proper segregation of the attorneys' fees, it may be determined that a lesser or a greater fee is correct."). If anything, *Ralston Oil* supports the conclusion that, even if the Plaintiffs had not allocated their fees, "the failure to [do so] does not mean that [they] cannot recover any of [their] attorneys' fees" because "[u]nsegregated attorneys fees for the entire case are some evidence of what the segregated amount should be." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) (citing *Gullo Motors*, 212 S.W.3d at 314). Instead, the Court, as the trier of fact, would establish the amount of reasonable attorneys' fees. *Id.* (citing *Sterling*, 822 S.W.2d at 12); *accord Hensley*, 461 U.S. at 438 ("Given the interrelated nature of the facts and legal theories in this case, the [trial court] did not err in refusing to apportion the fee award mechanically on the basis of respondents' success or failure on particular issues.").

The Defendants next object to the sufficiency and legitimacy of the Plaintiffs' proffered billing timesheets, arguing that the timesheets constitute inadmissible hearsay and lack enough information to support the fee claim. They further contend that the Court must strike the Haynes affidavit because it was given by a person not designated as one of the Plaintiffs' attorneys' fees experts. Addressing the affidavit-related objection first, the Court denies the Defendants' motion to strike. The Court knows of no authority mandating that

billing timesheets be attested to by an expert and finds that the affiant, Craig Haynes, possesses qualifications sufficient to render his testimony credible. Thus, the timesheets need not qualify as a business record for the Court to consider the firms' billing information.

But, according to the Defendants, the Court also may not consider the firms' timesheets because some have been redacted to an extent that cannot support the Plaintiffs' fee calculations, rendering the Haynes affidavit "incredible on its face" since Haynes used the redacted timesheets to inform his testimony. Defs.' Resp. at 7 & n.3. The Defendants cite a recent bankrupcty case, *In re Franzin*,[5] in which the court refused to grant a fee request supported by redacted timesheets and affidavit testimony. *Franzin*, however, does not control this Court's decision and, even if it did, it does not inexorably lead to the Defendants' desired result. The *Franzin* court did not bar the uncontradicted affidavit testimony there. It simply noted that, because the affiant's testimony was derived from an examination of redacted timesheets, the affidavit did not "compel" a fee award as a matter of law and was "entitled to little weight." 413 B.R. at 418 (citing *Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 690 (Tex. App. – Houston 2005)).

As *Cole Chemical* explains, a court's authority to determine fee awards stems from its role as trier of fact. Texas law therefore allows courts "to look at the entire record and to view the matter in light of the amount in controversy, the nature of the case, and [the court's] personal experience as a lawyer and judge" when awarding fees. 228 S.W.3d at 690 (citing *Armstrong Forest Prods. v. Redempco, Inc.*, 818 S.W.2d 446, 453 (Tex. App. – Texarkana

---

[5]413 B.R. 378 (N.D. Tex. 2009).

1991, writ den.)). Thus, even if the Haynes affidavit was "unreasonable, incredible, or . . . questionable," – and the Court does not believe it to be so – "then such evidence would only raise a fact issue to be determined by the trier of fact." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880 (Tex. 1990). Where the *Franzin* court felt that this militated against granting the fee request in that case, this Court finds that, based on the record, the case's nature, and the Court's familiarity with the case and others like it, the Plaintiffs provide sufficient facts to support a fee award here.

The Defendants make three other objections, which the Court briefly examines because they relate to issues previously decided. First, the Defendants argue that the Plaintiffs may not recover fees from the Patmans under their breach of contract claim because the Plaintiffs made their section 38.002 demand only on Sundance Resources and not the Patmans. Defs.' Resp. at 12-13; *see* TEX. CIV. PRAC. & REM. CODE § 38.002. In light of the jury's alter ego finding, the Court rules that the Plaintiffs made demand on the Patmans for section 38.002 purposes.

Second, the Defendants maintain that because "the [s]tatutory [f]raud findings are invalid as against the individual defendants . . . no fees can be awarded against them." The Court has subsequently ruled upon the Defendants' motion for new trial and to amend judgment, leaving intact all but one of the jury's findings of liability for statutory fraud [330]. Thus, the Court rejects as moot this aspect of Defendants' argument.

Finally, the Defendants contend that the Plaintiffs cannot recover fees incurred during appeal. Defs.' Resp. at 14-15. As noted earlier, claimants may recover appellate fees in a

recovery request presented to the trial court. *Smith*, 757 S.W.2d at 426; *Int'l Sec. Life Ins. Co. v. Spray*, 468 S.W.2d 347, 349 (Tex. 1971) ("[I]t has been decided in Texas that the award of any [appellate] attorney fee is a fact issue which must be passed upon by the trial court."). The Defendants ground this objection in their opposition to the Haynes affidavit. Accordingly, the Court finds the Plaintiffs' appellate-fees request reasonable for the same reasons already articulated above. To the extent that the Defendants challenge Mr. Haynes's ability to knowledgeably opine on appellate fees, the Court finds him sufficient qualified.

## CONCLUSION

Based on the evidence before it, the Court finds the Plaintiffs' fee request reasonable and grants the Plaintiffs' motion. The Court orders the Defendants to pay $1,574,744.50 in attorneys' fees plus $100,000 in appellate attorneys' fees, for a total of $1,674,744.50. This amount to be paid by Defendants in accordance with the jury's finding of joint and several liability.

Signed November 3, 2010.

_____
David C. Godbey
United States District Judge